OPINION
{¶ 1} This is an accelerated calendar appeal, taken from a final judgment of the Lake County Court of Common Pleas. Appellant, Dawn Holin, is seeking the reversal of the trial court's decision that she is not entitled to be released on bail during the pendency of the underlying criminal case against her. As the grounds for her appeal, she asserts that the trial court's specific factual findings were not supported by clear and convincing evidence.
 {¶ 2} In early April 2006, two detectives of the Madison Township Police Department were approached by a confidential informant who had information about an alleged plot to murder four public officials in Lake County. Specifically, the informant told one of the detectives that he had been involved in recent conversations during which appellant's husband, Joseph A. Sands, had discussed the possibility of making certain improvised explosive devices that could be used to incinerate the personal residences of a village mayor, municipal judge, village police chief, and city prosecutor. The informant further indicated that Sands and appellant had taken steps to purchase some of the materials that could be employed to create the proposed "pipe bombs."
 {¶ 3} Concluding that the informant's information was credible, the detectives gave the informant a digital recording device. Throughout the following week, the informant used the device to record a number of conversations between himself and Sands. Appellant was also involved in some of these discussions. In then reviewing the resulting tapes, the detectives heard Sands discuss the specific manner in which the explosive devices would be used; i.e., each pipe bomb would have a "timed" wick that could be ignited before it was thrown through a window of the residence. Due to the nature of the wick, the pipe bomb would not explode until the thrower had an opportunity to run from the area.
 {¶ 4} Based upon the secret recordings and oral statement from the informant, the two detectives learned that appellant had participated in the conspiracy by calling various stores for the purpose of locating the necessary materials. They were further informed that appellant had actually driven to one of the stores herself and bought a special type of gunpowder. In addition, the detectives learned that appellant had given money to the informant to purchase other materials for the explosive devices.
 {¶ 5} On one of the recordings produced by the informant, the detectives heard Sands make plans for traveling to a specific store in central Ohio for the purpose of purchasing the timed wick. After following Sands and the informant to the store and watching them actually purchase the wick, the detectives and certain federal officers placed Sands under arrest. During subsequent searches of Sands' residence and his automotive repair shop, the authorities were able to find other materials that could be used to construct explosive devices, including gunpowder, pipes, and caps.
 {¶ 6} Once Sands had been taken into custody, appellant was also arrested and then interrogated by one of the Madison Township detectives. After making oral statements to the detective, appellant agreed to compose a written statement that summarized her knowledge of the basic plot. As part of this statement, she admitted that she had given the informant a piece of paper that contained the phone numbers of two of the public officials who were the targets of the conspiracy. She also indicated that she had been responsible for obtaining the address of the store where Sands had bought the wick.
 {¶ 7} Upon the completion of the federal investigation into the alleged plot, the Lake County Grand Jury returned a 14-count indictment against appellant. The counts consisted of four charges of conspiracy to commit aggravated murder, eight charges of conspiracy to commit aggravated arson, and two charges of engaging in a pattern of corrupt activity. Under each of the "aggravated murder" charges, the indictment alleged that, after planning the proposed offense with Sands, appellant had taken certain steps to commit the murder of one of the four public officials in question.
 {¶ 8} In conjunction with the service of the indictment, the state moved the trial court to deny appellant bail, pursuant to R.C. 2937.222. Once the Lake County authorities were able to obtain custody over appellant from the federal authorities, an evidentiary hearing was held on the state's motion. At the same time that the trial court went forward as to appellant, it also considered whether Sands should be denied bail during the pendency of the separate criminal action against him.
 {¶ 9} During the evidentiary hearing, the state presented the testimony of Detective Timothy Doyle of the Madison Township Police Department, who basically summarized the evidence that he and a second detective had been able to collect as part of their investigation into the conspiracy. His summary included references to the recordings made by the informant and appellant's written statement. In addition, the state gave a copy of appellant's statement to the trial court for consideration, even though that copy was never properly submitted into evidence. Appellant did not submit any evidence in response.
 {¶ 10} At the conclusion of the hearing, the trial court stated on the record that the state had presented sufficient evidence to establish the three requirements for denying bail under R.C. 2937.222. In support of its finding, the trial court expressly indicated that it was relying on both the testimony of Detective Doyle and the copy of appellant's written statement. Based on this, the trial court also stated that it would be granting the state's motion to deny bail to appellant. Five days after the hearing, the trial court journalized its decision in a written judgment.
 {¶ 11} Pursuant to R.C. 2937.222(D), appellant immediately appealed the "bail" decision to this court. In now challenging the merits of that decision, appellant has assigned the following as error:
 {¶ 12} "The trial court erred in denying appellant bond pursuant to Ohio Revised Code [Section] 2937.222."
 {¶ 13} In rendering its decision on the motion to deny all bail, the trial court made three specific findings of fact. Under her sole assignment of error, appellant submits that the trial court's decision must now be reversed because each of the three findings was not supported by clear and convincing evidence. Stated differently, appellant contends that the state failed to present sufficient evidence to warrant the three findings.
 {¶ 14} Prior to addressing the merits of appellant's assignment, this court would first note that, while the instant appeal was pending before us, appellant entered a plea of guilty to certain charges and is scheduled to be sentenced in January 2007. Since the subject matter of the appealed judgment pertains solely to whether appellant was entitled to be released on bail before her trial, the merits of the instant matter have technically become moot. Nevertheless, we would also note that, even though the present statutory procedure pertaining to the denial of pretrial bail was enacted several years ago, only one appellate court has had the opportunity to review the application of this unique procedure by a trial court. In light of the dearth of guiding legal precedent, we conclude that a full discussion of appellant's sole assignment is still warranted in this instance.
 {¶ 15} As a general proposition, a criminal defendant's right to bail during the pendency of a criminal proceeding is governed by Section 9, Article I of the Ohio Constitution. In January 1998, this provision was amended to provide, in pertinent part, as follows:
 {¶ 16} "All persons shall be bailable by sufficient sureties, * * * except for a person who is charged with a felony where the proof is evident or the presumption great and where the person poses a substantial risk of serious harm to any person or to the community. * * *
 {¶ 17} "The General Assembly shall fix by law standards to determine whether a person who is charged with a felony where the proof is evident or the presumption great poses a substantial risk of serious physical harm to any person or to the community."
 {¶ 18} Pursuant to the express authorization set forth in the latter part of the foregoing provision, the Ohio General Assembly passed R.C.2937.222 in 1999. Subsection (A) of this statute provides that, upon the filing of a proper motion, the trial court in a criminal action must hold a hearing to determine if the defendant should be denied bail when he or she has been charged with, inter alia, a felony of the first or second degree. The subsection further delineates the specific rights that must be afforded to the defendant during the hearing. These include the right to be represented by an attorney, to present witnesses and testify in his or her own behalf, and to cross-examine any witness called by the state. As to the issue of the burden of proof in such a hearing, subsection (A) also states:
 {¶ 19} "Regardless of whether the hearing is being held on the motion of the prosecuting attorney or on the court's own motion, the state has the burden of proving that the proof is evident or the presumption great that the accused committed the offense with which the accused is charged, of proving that the accused poses a substantial risk of serious physical harm to any person or to the community, and of proving that no release conditions will reasonably assure the safety of that person or the community."
 {¶ 20} Consistent with the foregoing, R.C. 2937.222(B) indicates that a motion to deny bail should be granted only when the trial court finds by clear and convincing evidence that the state has satisfied each of the three requirements referenced in subsection (A). In addition, the statute provides that, in reviewing the parties' evidentiary submissions, the trial court is not obligated to follow the rules of evidence that would apply during an actual criminal trial.[1]
 {¶ 21} In essentially arguing that the state's evidence in this instance was insufficient to establish any of the three statutory requirements, appellant first focuses upon whether it was shown that she actually committed the charged offenses. As to this point, appellant submits that the state failed to present any evidence indicating that she was involved in a conspiracy to murder multiple public officials. Specifically, she contends that the state only demonstrated that she played a role in a plot to assassinate one public official, the mayor of the Village of North Perry, Ohio.
 {¶ 22} Our review of Detective Doyle's testimony during the "bail" hearing confirms that, in describing the discussions on the digital recordings, Detective Doyle did give more emphasis to those assertions that Sands had made regarding the North Perry mayor. However, at the beginning of his testimony, Detective Doyle stated that the recordings of Sands' discussions had also contained references to the municipal judge as a target of the plot. Furthermore, Detective Doyle testified that, even before the recording of the conversations had commenced, the informant had told him that Sands had indicated the desire to harm the judge and the village police chief. In addition, the detective testified that appellant had admitted in her written statement that she had given the informant a note that referred to the phone numbers of the judge and the local city prosecutor. Therefore, there was considerable evidence that demonstrated that the conspiracy involving appellant was not limited to the proposed murder of a single public official, but actually encompassed four possible victims.
 {¶ 23} As a separate point concerning the first statutory requirement for denying all bail, appellant asserts that the state was not able to establish that she was actually played a role in the conspiracy. As to this point, we would reiterate that the evidence indicated that appellant: (1) participated in some of the conversations with Sands; (2) took steps to locate some of the materials to build the pipe bombs; (3) gave the informant money to buy some of the materials; and (4) gave the informant information as to how to find two of the victims. The foregoing was clearly sufficient to show that appellant aided in the furtherance of the conspiracy to purposely cause the death of the four officials.
 {¶ 24} In addition, a review of the evidence as a whole shows that the conspirators had engaged in a serious plot to commit four murders. First, the testimony of the detective readily indicated that Sands not only spoke to the informant about making the explosive devices, but also attempted to get information about pipe bombs from other individuals. Second, the evidence established that, after taking steps to obtain materials for use in making the pipe bombs, Sands and appellant had the materials at their home and work when they were arrested. Third, the state demonstrated that the conspirators actually engaged in a "dry run" in regard to the residence of the village mayor.
 {¶ 25} In relation to the standard of clear and convincing evidence, this court has stated that the standard is "that measure of proof which is more than a preponderance of the evidence but less than the extent of such certainty as is required beyond a reasonable doubt in criminal cases, and which would provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established."[2]
Pursuant to the foregoing discussion, we hold that the state submitted sufficient evidence during the evidentiary hearing for the trial court to form a firm belief that appellant had conspired to commit the offenses of aggravated murder and aggravated arson. Thus, the trial court's record in this case does support the trial court's finding that the first requirement for denying all bail under R.C. 2937.222(A) had been met.
 {¶ 26} As was noted above, under the second statutory requirement for denying bail to a criminal defendant, the state must prove that the defendant poses a substantial risk of serious physical harm to a person or the community. As to this particular requirement, appellant has raised two arguments for consideration. First, appellant asserts that the charges against her were not of such a nature that they warrant the complete denial of bail. In support of this point, she emphasizes that no one was injured as a result of the conspiracy. Second, she states that any weight to be given the nature of the charges was surpassed by the fact that she is the mother of three children and has significant ties to the community.
 {¶ 27} Concerning appellant's first argument, this court would indicate that the fact that no one was harmed by the conspirators' actions does not lessen the seriousness of the underlying charges. The state's evidence readily showed that the purpose of the plot was to take the lives of four public officials in their respective homes. The evidence further shows that the conspirators planned to achieve this purpose by means that can only described as terrorism. Furthermore, even if appellant was not the individual who was primarily responsible for the plot, the state was able to establish that she still played a considerable role in carrying out the plot until the arrests were made.
 {¶ 28} As to her second argument, we would note that R.C.2937.222(C)(3) states that the defendant's personal history can be considered in determining whether she poses a substantial risk of serious physical harm to a person or the community. However, the statute also provides that the nature and the circumstances of the charged crimes are a proper consideration.[3] Once again, we would emphasize that appellant participated in a plot to incinerate the personal homes of four public officials. Even though appellant did not have a history of violent criminal acts and had lived in the Lake County community the majority of her life, the nature of the charged offenses was entitled to significantly greater weight than appellant's personal history. In light of this, the trial court could have concluded that, regardless of whether appellant posed any threat to a specific person at the time of the evidentiary hearing, the fact that she was willing to take steps in support of such a plot made her a substantial risk to the physical well-being of the community as a whole. As a result, the trial court did not err in finding that the state had proven the second requirement under R.C. 2937.222(A) by clear and convincing evidence.
 {¶ 29} Under the third requirement for denying bail, the state must prove that there are no release conditions that could reasonably assure the safety of an individual and the community. In contesting the trial court's finding on this point, appellant submits that the state failed to establish that appellant posed such a threat to any specific individual that her behavior could not be controlled by release conditions. She argues that, in light of her limited role in the conspiracy, she did not pose a danger to anyone in Lake County. In support of this position, she further notes that, by the time the hearing was held on the motion to deny bail, the village mayor who had been a target of the plot had already died.
 {¶ 30} As to the latter point, this court would reiterate that the state presented evidence which showed that the underlying conspiracy extended beyond the mayor to three other public officials. More importantly, we would state that, even if appellant did not pose a threat to a specific person when the question of bail was considered, the nature of the charges readily showed that the level of danger she posed to the general community was extremely serious. Regardless of the extent of the role appellant played in the plot to murder the four officials, the fact that she was willing to play such a role supports the conclusion that there were no release conditions that adequately assure the safety of the community. Thus, the trial court did not err in finding that the state had satisfied the third statutory requirement under R.C. 2937.222(A).
 {¶ 31} In contesting the trial court's factual findings in this case, appellant had framed her argument in terms of sufficiency of the evidence. As a general proposition, the state will be deemed to have presented sufficient evidence when a rational trier of fact could find all required elements in accordance with the applicable burden of proof.[4] In other words, the issue of sufficiency raises a legal question concerning whether the state has submitted the minimal amount of evidence needed in regard to each element or requirement of its case.[5]
 {¶ 32} In this instance, our review of the trial transcript verifies that the state submitted sufficient evidence that, if believed, established the three requirements for denying bail clear and convincingly. Therefore, because the trial court did not err in granting the state's motion to deny appellant bail in the underlying criminal action, the sole assignment of error in this appeal lacks merit.
 {¶ 33} Pursuant to the foregoing analysis, the judgment of the trial court is affirmed.
DIANE V. GRENDELL, J., concurs in judgment only,
COLLEEN MARY OTOOLE, J., concurs in judgment only.
[1] See R.C. 2937.222(A).
[2] State v. Anderson (Dec. 14, 2001), 11th Dist. No. 2000-G-2316, 2001 Ohio App. LEXIS 5644, at *8.
[3] See R.C. 2937.222(C)(1). and the community. In contesting the trial court's finding on this point, appellant submits that the state failed to establish that appellant posed such a threat to any specific individual that her behavior could not be controlled by release conditions. She argues that, in light of her limited role in the conspiracy, she did not pose a danger to anyone in Lake County. In support of this position, she further notes that, by the time the hearing was held on the motion to deny bail, the village mayor who had been a target of the plot had already died.
[4] See State v. Shepherd, 11th Dist. No. 2003-A-0028, 2006-Ohio-4315, at ¶ 19.
[5] See State v. Bush, 11th Dist. No. 2005-P-0004, 2006-Ohio-4038, at ¶ 15-16.