**The STATE of Ohio, Plaintiff–Appellee,**

v.

**Dawn HOLIN, Defendant–Appellant.**

[Cite as *State v. Holin,* 174 Ohio App.3d 1, 2007-Ohio-6255.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2007–L–028.

Decided Nov. 21, 2007.

Charles E. Coulson, Lake County Prosecutor, and Craig A. Swenson, Assistant Prosecutor, for appellee.

R. Paul LaPlante, Lake County Public Defender, Vanessa R. Clapp, Assistant Public Defender, for appellant.

DIANE V. GRENDELL, Judge.

{¶ 1} Defendant-appellant, Dawn Holin, appeals her conviction and sentence in the Lake County Court of Common Pleas, following the entry of a guilty plea to four counts of conspiracy to commit aggravated murder. For the following reasons, we affirm the decision of the court below.

{¶ 2} On June 16, 2006, Holin was indicted on two counts of engaging in a pattern of corrupt activity, felonies of the first degree in violation of R.C. 2923.32(A)(1), four counts of conspiracy to commit aggravated murder, felonies of the first degree in violation of R.C.2923.01(A)(1), four counts of conspiracy to commit aggravated arson, felonies of the second degree in violation of R.C. 2923.01(A)(1), and four counts of conspiracy to commit aggravated arson, felonies of the third degree in violation of R.C. 2923.01(A)(1). The indictments arose out of Holin's involvement in a plot to kill then North Perry Village Mayor Thomas Williams, North Perry Police Chief Denise Mercsak, North Perry Solicitor and Police Prosecutor Joseph M. Gurley, and Painesville Municipal Court Judge Michael A. Cicconetti, using pipe bombs. See *State v. Holin,* 11th Dist. No. 2006–L–170, 2007-Ohio-34, 2007 WL 37794, at ¶ 2–7.

{¶ 3} On December 4, 2006, Holin entered a negotiated plea agreement whereby she pleaded guilty to the four counts of conspiracy to commit aggravated murder. The trial court entered a nolle prosequi on the remaining counts of the indictment. By stipulation pursuant to R.C. 2923.01(F), the parties agreed that the conspiracy convictions would merge and Holin would be sentenced for only one count of conspiracy to commit aggravated murder.

{¶ 4} At the change-of-plea hearing, the trial judge asked Holin, "Although this may be your attorneys' recommendation for you to plead guilty to these four charges, is this your own decision and voluntary act to do so?" Holin answered

affirmatively. The judge also asked Holin, "Are you completely satisfied with the representation provided by your attorneys Terry Gilbert and Andrea Whitaker?" Holin answered affirmatively.

{¶ 5} The prosecutor detailed the evidence demonstrating Holin's involvement in the plot to kill the North Perry officials and her voluntary statements to law-enforcement officers admitting her awareness of and complicity in the conspiracy to commit the murders. Specifically, the prosecutor stated that the evidence would show that Holin solicited, purchased, and paid for the gunpowder for the pipe bombs, that Holin assisted in acquiring the pipe and end caps, that Holin searched for and eventually located the appropriate wicks to make the bombs, and that Holin obtained the addresses of three of the intended victims. The trial judge then asked Holin whether the state's recitation of the evidence was true. Holin answered affirmatively.

{¶ 6} On December 14, Holin filed a motion pro se for withdrawal of plea. Holin advised the court that she had dismissed Terry Gilbert as counsel and sought to withdraw her plea entered on December 4, 2006. Holin alleged that she had been misled and lied to about her case and that she and attorney Gilbert had had and continued to have "major differences and opinions concerning this case."

{¶ 7} On January 4, 2007, a sentencing hearing was held, at which time Holin's motion for withdrawal of plea was addressed. Holin explained before the court that a "difference of opinion" existed between her and trial counsel regarding whether she should enter a plea or take the case to trial. Holin wanted to take the case to trial because she was not guilty. Holin stated that she had entered the plea on December 4, 2006, because she was "pressured" by her attorney to do so.

{¶ 8} Holin then advised the court that she had dismissed her attorneys. The court construed Holin's statement as a request to dismiss counsel and thereupon denied the request.

{¶ 9} The trial court sentenced Holin to a ten-year term of imprisonment for each count, the terms to be served concurrently with each other, and ordered Holin to pay costs.

{¶ 10} This appeal timely follows. Holin raises the following assignments of error:

{¶ 11} (1) "The trial court erred to the prejudice of the defendant-appellant by denying her presentence motion to withdraw her plea in violation of her due process rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.

{¶ 12} (2) "The trial court erred to the prejudice of the defendant-appellant when it denied her the right to dismiss her attorneys contrary to the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.

{¶ 13} (3) "The trial court erred by sentencing the defendant-appellant to the maximum term of imprisonment."

{¶ 14} In the first assignment of error, Holin challenges the trial court's denial of her presentence motion to withdraw her guilty plea.

{¶ 15} The general rule in Ohio is that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed." Crim.R. 32.1. "A defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. A trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *State v. Xie* (1992), 62 Ohio St.3d 521, 584 N.E.2d 715, at paragraph one of the syllabus. "The decision to grant or deny a presentence motion to withdraw a guilty plea is within the sound discretion of the trial court." Id., at paragraph two of the syllabus.

{¶ 16} This court has often applied the four-factor test set forth in *State v. Peterseim* (1980), 68 Ohio App.2d 211, 22 O.O.3d 341, 428 N.E.2d 863, to determine whether a trial court has abused its discretion in denying a motion to withdraw a plea. *State v. Story,* 11th Dist. No. 2006–A–0085, 2007-Ohio-4959, 2007 WL 2759496, at ¶ 16; *State v. Haney,* 11th Dist. No. 2006–L–253, 2007-Ohio-3712, 2007 WL 2080291, at ¶ 12; *State v. Bailey,* 2004–P–0086, 2005-Ohio-6900, 2005 WL 3528900, at ¶ 26. Following *Peterseim,* a trial court does not abuse its discretion in denying a motion to withdraw a plea "(1) where the accused is represented by highly competent counsel, (2) where the accused was afforded a full hearing, pursuant to Crim. R. 11, before he entered the plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request." 68 Ohio App.2d 211, 22 O.O.3d 341, 428 N.E.2d 863, at paragraph three of the syllabus.

{¶ 17} Holin's argument is that "where there is a good reason to support the motion to withdraw, the failure to allow the motion must be deemed unreasonable." As good reasons for the withdrawal of her plea, Holin cites the facts that she filed her motion to withdraw ten days after entering the plea, she was pressured by her attorneys to plead guilty, she has consistently maintained her innocence, she has a complete defense to the charges, and the state would not be prejudiced by the withdrawal. We disagree.

{¶ 18} Although the allegation that a defendant has entered a guilty plea under pressure from their attorneys may be grounds for granting a motion to withdraw a plea, the allegation, without more, does not compel that result. In the present case, the trial court thoroughly questioned Holin regarding the circumstances of the entry of her plea and concluded that her justification for withdrawing her plea was essentially a "change of heart." Contrary to Holin's allegations, her attorneys did not lie to her or mislead her. Rather, Holin conceded that a "difference of opinion" existed whether to enter a plea or take the case to trial. Holin stated that her attorneys told her that if she did not take the plea, her state trial would probably be postponed until after she was sentenced in federal court and the Lake County judge would probably order her sentence to be served consecutively with her federal sentence. Such advice from one's trial counsel does not constitute undue influence over a defendant so as to provide justification for withdrawing a valid guilty plea. *Story*, 2007-Ohio-4959, 2007 WL 2759496, at ¶ 38 ("a change of heart is not sufficient to serve as the basis for a motion to withdraw a plea"), citing *Haney*, 2007-Ohio-3712, 2007 WL 2080291, at ¶ 19.

{¶ 19} Furthermore, the trial court noted that a full month passed from the time Holin advised the court that she intended to plead guilty until the change-of-plea hearing. Thus, Holin maintained her intention to plead guilty for a significant amount of time. This period of time allowed Holin to reflect on her decision and demonstrates that the decision to enter a plea was a considered decision, and not the result of sudden impulse or undue pressure.

{¶ 20} Likewise, Holin's claim of innocence does not provide a reasonable basis for withdrawing the plea. Although she assisted in locating and purchasing the materials necessary to make pipe bombs, such as the powder, the pipes, and the end caps, and obtained the home addresses of some of the intended victims, Holin asserts that she was unaware of Sands's intentions. This assertion is contradicted by Holin's confession, in which she admitted that Sands informed her of his intention to make pipe bombs and kill certain public officials. Holin confirmed the validity of this evidence at her change-of-plea hearing. *United States v. Barker* (C.A.D.C.1975), 514 F.2d 208, 221 ("Were mere assertion of legal innocence always a sufficient condition for withdrawal, withdrawal would effectively be an automatic right").

{¶ 21} On appeal, it was suggested that Holin's will was overborne because of her borderline IQ of 73 and a history of abusive relationships with men. These arguments, which were not presented to the trial court, do not render the court's decision an abuse of discretion. Prior to entering her guilty plea, Holin was evaluated to determine her competency to stand trial. The psychologist evaluating Holin administered the Kaufman Brief Intelligence Test 2, which yielded an

IQ composite score of 73. Nevertheless, the psychologist concluded "with reasonable psychological certainty" that Holin "was able to discuss her case, legal consequences, and possible outcomes" and that "there is *no reason for her not to* have these abilities. That is, *she has no identifiable* serious mental illness or *mental defect*." (Emphasis added). The psychologist further determined that Holin is capable of assisting in her defense and trusts her attorneys. "She has discussed legal strategy, and considers what her attorneys advise. She knows that she is the one who decides all decisions in her case, however."

{¶ 22} Finally, under the four *Peterseim* factors, no basis exists for reversing the trial court's denial of Holin's motion to withdraw her plea. It is not contended that the trial court failed to conduct a proper change-of-plea hearing in accordance with Crim.R. 11, that Holin's trial attorneys were less than competent, that the trial court conducted a hearing on the motion and allowed Holin to raise the arguments she wished to raise, or that the trial court failed to give careful consideration to Holin's motion.

{¶ 23} For the foregoing reasons, Holin's first assignment of error is without merit.

{¶ 24} Under the second assignment of error, Holin argues that the trial court erred by not allowing her to dismiss her trial attorneys. Although Holin advised the court that she had "fired" her attorneys in her motion for withdrawal plea, Holin's counsel filed a sentencing memorandum on her behalf on December 22, 2004. The court ordered Holin's attorneys to continue their representation during the remainder of the sentencing hearing.

{¶ 25} Whether a trial court errs by refusing to allow a defendant to discharge their counsel or seek substitute counsel has been reviewed under an abuse-of-discretion standard. E.g. *State v. McNeill* (1998), 83 Ohio St.3d 438, 452, 700 N.E.2d 596 ("It was within the trial court's discretion to decline to replace appointed counsel").

{¶ 26} The Ohio Supreme Court has held that before a defendant is entitled to discharge appointed counsel, "the defendant must show 'a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel.'" *State v. Coleman* (1988), 37 Ohio St.3d 286, 292, 525 N.E.2d 792, quoting *People v. Robles* (1970), 2 Cal.3d 205, 215, 85 Cal.Rptr. 166, 466 P.2d 710. "Factors to consider in deciding whether a trial court erred in denying a defendant's motion to substitute counsel include 'the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate de-

fense.'" *State v. Jones,* 91 Ohio St.3d 335, 342, 744 N.E.2d 1163, quoting *United States v. Jennings* (C.A.6 1996), 83 F.3d 145, 148.

{¶ 27} In the present case, the trial court did not abuse its discretion by denying Holin's request to dismiss her counsel in the course of a hearing. Holin's dissatisfaction with counsel stemmed from their "difference of opinion" regarding the plea bargain, rather than counsels' presentation of a defense in mitigation for sentencing. There is no evidence that Holin's relationship with her attorneys had broken down to the point that her right to the effective assistance of counsel was jeopardized. Finally, Gilbert and Whitaker's "forced" representation of Holin lasted only for a few minutes until the conclusion of the sentencing hearing, at which point Holin was appointed appellant counsel. In these circumstances, no valid reason existed to delay a sentencing hearing already begun solely for the purpose of allowing Holin to retain new counsel or proceed pro se.

{¶ 28} The second assignment of error is without merit.

{¶ 29} Under the third assignment of error, Holin argues that the trial court erred in imposing sentence, because it failed to give appropriate consideration to the following mitigating factors: Holin's genuine remorse, her ignorance of Sands' intention to cause harm, her low IQ, and the fact that she has been controlled and dominated throughout her life by abusive and/or alcoholic men.

{¶ 30} The overriding purposes of felony sentencing in Ohio "are to protect the public from future crime by the offender * * * and to punish the offender." R.C. 2929.11(A). A sentencing court "has discretion to determine the most effective way to comply with the purposes and principles of sentencing." R.C. 2929.12(A). "In exercising that discretion, the court shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct and the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing." R.C. 2929.12(A).

{¶ 31} It is well established that R.C. 2929.12(A) does not require a sentencing court to make specific findings regarding the seriousness and recidivism factors. Ohio's felony sentencing law requires the trial court only to "consider" the mitigating circumstances in the exercise of its discretion. *State v. Glenn,* 11th Dist. No. 2003–L–022, 2004-Ohio-2917, 2004 WL 1238346, at ¶ 47 ("A trial court is only required to *consider* mitigating factors" [emphasis sic] ). Thus, the Ohio Supreme Court has characterized the mandate of R.C. 2929.12(A) as a "general judicial guide for every sentencing * * * grant[ing] the sentencing judge discretion 'to determine the most effective way to comply with the purposes and principles of sentencing.'" *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856,

845 N.E.2d 470, at ¶ 36–37, quoting the statute. "It is important to note that there is no mandate for judicial fact-finding in the general guidance statutes. The court is merely to 'consider' the statutory factors." Id. at ¶ 42.

{¶ 32} In the present case, the court stated it was exercising its discretion "to determine the most effective way to comply with the purposes and principles of sentencing" and had "considered all relevant factors" including those set forth in R.C. 2929.12. The court noted that although there was one conspiracy, there were four intended victims and they suffered serious psychological harm. Although the progress of the conspiracy may have been directed by Sands, Holin willingly complied with his directions and thus her culpability is the same. The court observed that Holin's criminal record is more extensive than Sands's record. Finally, the court dwelt upon the significance of targeting public officials for murder. "If public officials are targeted for the proper execution of their duties, then the intimidation or retaliation will have a chilling effect on the performance of that duty." In particular, "judges have to be free from inappropriate influences of fear, coercion and intimidation * * * and this is critical and fundamental to the existence of an independent judiciary."

{¶ 33} The trial judge imposed a ten-year prison sentence for each count, the maximum sentence for a first degree felony. R.C. 2929.14(A).

{¶ 34} We find no error in the sentence imposed. Contrary to Holin's position, the trial court is not obligated, in the exercise of its discretion, to give any particular weight or consideration to any sentencing factor. Provided that the sentencing court duly considers the appropriate sentencing factors, it has full discretion to impose a sentence within the statutory range. State v. Anderson, 11th Dist. No. 2006–L–274, 2007-Ohio-5224, 2007 WL 2822760, at ¶ 11; Haney, 2007-Ohio-3712, 2007 WL 2080291, at ¶ 29.

{¶ 35} The third assignment of error is without merit.

{¶ 36} Holin's assignments of error are without merit. The judgment of the Lake County Court of Common Pleas, denying Holin's motions to withdraw her guilty plea and dismiss counsel and imposing sentence, is affirmed.

Judgment affirmed.

TRAPP, J., concurs.

O'TOOLE, J., dissents.

COLLEEN MARY O'TOOLE, J., dissenting.

{¶ 37} I respectfully dissent.

{¶ 38} With respect to appellant's first assignment of error, the trial judge in this instance navigated this mentally impaired defendant through a colloquy based upon his understanding of the case law. Appellant may have received a good benefit of the bargain and may not have experienced fraud perpetrated upon her by her attorneys. She may not have "lied" to the court. The trial judge was quite able to navigate and lead her to believe that she had no other choice but to plead and led her directly into the necessary admission that she had a change of heart after the fact, which as a lone factor is an inadequate basis for granting a motion to withdraw a guilty plea. *State v. Ready*, 11th Dist. No. 2001–L–150, 2002-Ohio-7138, 2002 WL 31862201, at ¶ 28. However, I stress that appellant had an IQ of 73. Being mentally retarded or having a mental illness is not, in itself, enough to support a claim of incompetence. *In re J.J.*, 9th Dist. No. 21386, 2004-Ohio-1429, 2004 WL 574135, at ¶ 31. In fact, in the instant matter, appellant was found to be competent. However, her IQ placed her within the mental-retardation range.

{¶ 39} "An appellate court will review the trial court's determination of the Crim.R. 32.1 motion for an abuse of discretion." *State v. Desellems* (Feb. 12, 1999), 11th Dist. No. 98–L–053, 1999 WL 753996, at 8, citing *State v. Blatnik* (1984), 17 Ohio App.3d 201, 202, 17 OBR 391, 478 N.E.2d 1016. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Desellems*, supra, at 8, citing *State v. Montgomery* (1991), 61 Ohio St.3d 410, 413, 575 N.E.2d 167. Regarding this standard, I recall that the term "abuse of discretion" is one of art, essentially connoting judgment exercised by a court that comports neither with reason nor the record. *State v. Ferranto* (1925), 112 Ohio St. 667, 676–678, 148 N.E. 362.

{¶ 40} The withdrawal of a guilty plea is about withdrawing an admission to the crimes of which one has been accused and reasserting one's constitutional right to a trial and to make the state prove its burden of proof as to each element of the crime beyond a reasonable doubt. There is a compelling argument that this appellant may not have the requisite intelligence to participate knowingly in a conspiracy. A withdrawal of plea before sentencing is to be freely allowed. *Xie*, 62 Ohio St.3d at 527, 584 N.E.2d 715. The pressure she felt to admit the crime and plead guilty, preadmission, not postadmission, may have been due to the fact that she was claiming innocence or that she wanted a trial or wanted to proceed pro se, all of which are legitimate bases to withdraw a plea. These were never inquired into by the trial judge. All of the professionals present knew of her limited intelligence, and although not dispositive in itself, it goes to the issue of a voluntary and knowledgeable plea. From the record it appears as if a trial in this matter may not have been in appellant's best interest. This, however, is

not our concern, as the court is not her guardian. A request to withdraw a presentence plea seven days after it is taken, with the understanding that appellant's trial would not occur until after her federal charges were concluded, is not unreasonable, nor would it place any undue burden on the trial court or the state.

{¶ 41} Based on the record, I believe that appellant was represented by highly competent attorneys, she was afforded a full hearing pursuant to Crim.R. 11, and she was given an opportunity to answer the questions asked by the trial court for the basis of the Crim.R. 32.1 motion. However, this is not relevant to a timely request to withdraw a plea. I do not believe that the trial court gave the necessary consideration to appellant's motion, due to her low IQ and the fact that she felt she was pressured by her attorneys to plead guilty preplea not postplea. Thus, all of the *Peterseim* factors were not met.

{¶ 42} In addition, the trial court accepted appellant's guilty plea on December 7, 2006. On December 14, 2006, appellant filed a pro se motion to withdraw her guilty plea, stating that she felt that her counsel had misrepresented her. Given the circumstances here, a seven-day time span between the entry of the guilty plea and the filing of the motion to withdraw it is not unreasonable. See *State v. Arden* (May 21, 1993), 4th Dist. No. 543, 1993 WL 183496, (holding that 28 days between the appellant's plea and his motion to withdraw was not an unreasonable length of time).

{¶ 43} Based on the foregoing, this writer believes that the trial court abused its discretion by denying appellant's Crim.R. 32.1 motion. I believe that the trial court abused its discretion and I fail to see, given the circumstances in this case, that the majority would ever find in this case a withdrawal of a plea as being an abuse of discretion when the trial court's denial does not comport with reason or the record. It is clearly an abuse of discretion. Thus, I believe that appellant's first assignment of error has merit.

{¶ 44} Regarding appellant's second assignment of error, this writer concludes that there is sufficient information in the record that does not substantiate a knowing waiver. The trial court erred by failing to dismiss counsel at sentencing; however, that error would be harmless given this dissent's disposition of appellant's first assignment of error. Thus, I believe, as does the majority, that appellant's second assignment of error is without merit.

{¶ 45} With respect to her third assignment of error, based on the foregoing disposition of appellant's first assignment of error, I believe it should be rendered moot.

{¶ 46} Thus, I believe that appellant's first assignment of error has merit, her second assignment of error is not well taken, and her third assignment of error is

moot. I believe the judgment of the Lake County Court of Common Pleas should be affirmed in part and reversed in part, and the cause should be remanded for further proceedings consistent with this opinion.