[Cite as *State v. Suarez*, 2014-Ohio-1350.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | CASE NO. 2013-G-3167 |
| ROBERT SUAREZ, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Geauga County Court of Common Pleas, Case No. 12 C 000081.

Judgment: Affirmed.

*James R. Flaiz,* Geauga County Prosecutor, and *Nicholas A. Burling,* Assistant Prosecuting Attorney, Courthouse Annex, 231 Main Street, Suite 3A, Chardon, OH 44024 (For Plaintiff-Appellee).

*Virgil T. Morant,* 2130 Lakeland Avenue, Lakewood, OH 44107 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Robert Suarez, appeals his conviction and sentence, following a jury trial in the Geauga County Court of Common Pleas, for Having Weapons While Under Disability. The issues to be determined by this court are whether a court errs in sentencing a defendant when it determined that, although a defendant apologized, he did not show sufficient remorse, and whether a trial court errs by not

inquiring of a juror regarding whether he was sleeping during the trial. For the following reasons, we affirm the judgment of the trial court.

{¶2} On August 13, 2012, the Geauga County Grand Jury issued an Indictment, charging Suarez with one count of Having Weapons While Under Disability, a felony of the third degree, in violation of R.C. 2923.13(A)(2).

{¶3} A jury trial was held in this matter on July 16 and 17, 2013. Dawn Rositano, Suarez's neighbor, testified that on May 4, 2012, she observed Suarez arguing with his son, Damian, and then heard Damian shout, "Dad, put the gun down." She went over to the home, where Suarez was pointing a shotgun at Damian. Suarez threatened to "blow [Rositano's] head off" if she touched the gun.

{¶4} Rositano called 911 and police subsequently responded to Suarez's home. Deputy Brian Sebor testified that, upon searching the home, officers recovered a shotgun underneath the couch in the living room. The parties stipulated that Suarez had previously been convicted of a felony offense and had not been relieved of a weapons disability, pursuant to R.C. 2923.14.

{¶5} Closing arguments were presented on July 16, 2013. At the beginning of proceedings on the following day, defense counsel requested that "the judge * * * say something that I noticed at the very end of the day, ask the jury their sense of their attentiveness because I did notice Juror Number 10 * * * was getting a bit sleepy eyed while I was giving my closing argument, and his head was nodding a little bit." He stated that the court "might like to inquire of the jury whether they felt they were fully attentive during the entirety of the proceedings." The court determined that such a question was open-ended and might "bring about a can of worms." Defense counsel

indicated that this "point is well taken" and the defense "will be satisfied that the observation has been placed on the record."

**{¶6}** The jury found Suarez guilty of Having Weapons While Under Disability, as charged in the Indictment. This verdict was memorialized in the trial court's July 25, 2013 Order.

**{¶7}** On September 20, 2013, a sentencing hearing was held. At the hearing, Suarez stated that he had good intentions in allowing his son to move into his home to help him with a drug problem and admitted that he did not act "properly, * * * thoughtfully or respectfully" on the night of the incident. Suarez stated that he felt "horrible" for what had happened and wished he could "take it all back." Suarez's counsel noted that Rositano came to the hearing to "show some level of support" for Suarez. He also noted that Suarez had medical problems, including Hepatitis C, liver disease, and diabetes.

**{¶8}** The State recommended a sentence of at least 30 months, due to Suarez's frequent incarceration in the past.

**{¶9}** The court found that Suarez did express some remorse in court, but had not done so at the time of the presentence investigation (PSI), and emphasized his history of criminal offenses. The court sentenced Suarez to serve a term of three years in prison.

**{¶10}** This sentence was memorialized in a September 25, 2013 Judgment of Conviction. In that Judgment, the court also noted that it had considered the relevant sentencing factors under R.C. 2929.11 and .12.

**{¶11}** Suarez timely appeals and raises the following assignments of error:

3

{¶12} "[1.] The trial court erred in imposing the maximum sentence allowed by law without duly taking into consideration and applying all of the facts before the Court to all of the factors and purposes in R.C. 2929.11 and R.C. 2929.12.

{¶13} "[2.] The trial court erred in refusing either to investigate whether one of the jurors had slept during the trial or to admonish the jury concerning the matter."

{¶14} In his first assignment of error, Suarez argues that the trial court "overlooked" several facts related to sentencing, and this was both an abuse of discretion and resulted in a sentence that was clearly and convincingly contrary to law.

{¶15} Regarding the evaluation of felony sentences, this court has repeatedly followed the standard of review set forth by a plurality of the Ohio Supreme Court in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, which requires that courts "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse-of-discretion standard." *Id.* at ¶ 26; *State v. Vanderhoof*, 11th Dist. Lake No. 2013-L-036, 2013-Ohio-5366, ¶ 7; *State v. Grodzik*, 11th Dist. Portage No. 2012-P-0111, 2013-Ohio-5364, ¶ 5.

{¶16} It is well-recognized that a sentencing court "has discretion to determine the most effective way to comply with the purposes and principles of sentencing." R.C. 2929.12(A). The Ohio Supreme Court has described a sentencing court's discretion as "full discretion to impose a prison sentence within the statutory range." *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, paragraph three of the syllabus. "[T]he trial court is not obligated, in the exercise of its discretion, to give any particular

4

weight or consideration to any sentencing factor." *State v. Holin*, 174 Ohio App.3d 1, 2007-Ohio-6255, 880 N.E.2d 515, ¶ 34 (11th Dist.).

{¶17} Suarez takes issue with the trial court's failure to properly consider and weigh the relevant facts before it in reaching its sentence. He first argues that the trial court did not take into account the remorse he expressed during the sentencing hearing.

{¶18} The trial court noted that Suarez expressed "some remorse" in court, but also that he had not expressed remorse at the time the PSI was performed, stating only that the case was going to be appealed. The court was "surprised there isn't more of a heartfelt, profound expression" of remorse. Based on these comments, it appears the court considered all of the evidence before it, both the PSI and Suarez's in-court statements, in determining that his expression of remorse was not genuine or sufficient. As this court has held, "a reviewing court must defer to the trial court as to whether a defendant's remarks are indicative of genuine remorse because it is in the best position to make that determination." (Citation omitted.) *State v. Davis*, 11th Dist. Lake No. 2010-L-148, 2011-Ohio-5435, ¶ 15. Based on the foregoing, we find no basis to second-guess the lower court's determination as to this issue.

{¶19} Suarez also argues that the court failed to take into account his serious medical problems. Although the trial court did not make a statement specifically as to these issues, this does not mean that they were not considered. The court noted in its Judgment of Conviction that it had considered the information presented on behalf of Suarez and the PSI report, both of which included statements regarding his health. While his medical issues may be relevant, it has been noted that a defendant's medical condition does not require the imposition of a lesser sentence, since his medical needs

5

can be met in the prison system. *State v. Martin*, 12th Dist. Butler No. CA2013-03-055, 2013-Ohio-3676, ¶ 25. "[T]he court must sentence [a defendant] so as to protect the public," and not only consider what is best for the defendant. *Davis* at ¶ 14.

**{¶20}** Finally, Suarez argues that the trial court did not take into account the victim's statement, which was favorable to him. Again, there is no indication that the court did not take this into consideration, given that it noted in its Judgment of Conviction that it had considered this statement, even if no specific findings of fact were made. *State v. DeNiro*, 11th Dist. Lake Nos. 2012-L-121 and 2012-L-122, 2013-Ohio-2826, ¶ 20 (judicial fact-finding as to the statutory factors for sentencing is not required). The fact that Suarez's son did not want a lengthy sentence is also only marginally relevant to the crime committed, given that Suarez was convicted of improperly possessing a firearm due to his status as an individual under a weapons disability.

**{¶21}** The court was entitled to weigh any degree of remorse expressed and the additional potential mitigating circumstances raised by Suarez with the other factors in favor of granting a prison term. In addition to considering the foregoing, the court emphasized that Suarez had an extensive criminal record, which is documented in the PSI report. "Even the demonstration of genuine remorse" and the existence of other mitigating factors does not "mandate a lesser sentence where the judge determines * * * that the maximum or more than minimum sentence is necessary to achieve the purposes of felony sentencing, i.e., protecting the public from future crime by the offender and punishing the offender." *Davis*, 2011-Ohio-5435, at ¶ 17, citing *Holin*, 2007-Ohio-6255, at ¶ 34. The court expressed concern about Suarez being a dangerous and violent person, which provided justification for its sentence.

**{¶22}** Based on the foregoing, we cannot find that the trial court erred in issuing its sentence or in considering the requisite facts before it. Its sentence was within the statutory range and the court considered the necessary factors to reach Suarez's sentence.

**{¶23}** The first assignment of error is without merit.

**{¶24}** In his second assignment of error, Suarez argues that the trial court erred by failing to investigate or inquire further as to a juror who had fallen asleep during closing argument and by not "admonish[ing] the jury concerning the matter."

**{¶25}** The State argues that the failure to question the juror or investigate further did not amount to plain error and no prejudice resulted to Suarez.

**{¶26}** In a similar case, *State v. Sanders*, 92 Ohio St.3d 245, 750 N.E.2d 90 (2001), defense counsel raised the issue of a sleeping juror, and then argued on appeal that the juror should have been replaced or examined to determine whether she was sleeping. The court held that since defense counsel did not request these remedies at trial, or "express dissatisfaction with the trial judge's handling of the matter," a plain error standard should be applied. *Id.* at 253. Various courts have applied a plain error standard when defense counsel has brought the matter of a sleeping juror to the trial court's attention, but did not request that a remedy such as juror removal be ordered and did not object to the trial court's resolution of the issue. *State v. McKnight,* 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 185; *State v. Allen*, 8th Dist. Cuyahoga No. 97014, 2012-Ohio-1831, ¶ 35; *see State v. Houseman*, 7th Dist. Belmont No. 98 BA 4, 2000 Ohio App. LEXIS 3015, 20 (June 29, 2000) (appellant waived his right to seek review of error related to a sleeping juror when, although defense counsel

7

informed the court that the juror was sleeping, he "did not ask that the juror be voir dired, that testimony be repeated, that the sleeping juror be replaced by an alternate, or that a mistrial be granted").

**{¶27}** Similarly, in the present case, defense counsel brought the issue of the potential sleeping juror to the attention of the trial court and asked the judge to "inquire of the jury whether they felt they were fully attentive during the entirety of the proceedings." He did not argue, as he does now, that the trial court should have investigated into whether the specific juror was sleeping or that the jury should have been directed to pay attention (especially given that the trial had ended). He did not object to the trial court's handling of the matter. Thus, it appears a plain error standard would be appropriate in this matter. An alleged error constitutes plain error only if the error is obvious and, but for the error, the outcome of the trial clearly would have been different. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 108.

**{¶28}** In the present matter, defense counsel stated to the court that "Juror Number 10 * * * was getting a bit sleepy eyed while I was giving my closing argument, and his head was nodding a little bit." No other evidence was put on the record to support a finding that the juror actually was asleep, nor did defense counsel object to the lack of questioning of the juror. "[T]here is no *per se* rule requiring an inquiry in every instance of alleged [juror] misconduct." (Citation omitted.) *Sanders* at 253. In this case, in the absence of such a request, or specific allegations that the juror actually was sleeping and for how long, we cannot find that the trial court committed plain error

by not questioning the juror. *State v. Keener*, 11th Dist. Lake No. 2005-L-182, 2006-Ohio-5650, ¶ 27.

**{¶29}** "Courts have also rejected claims of error raised * * * where they are premised upon isolated incidents, where the defendant is the only person who witnesses the alleged misconduct, or where the claim is not raised until the trial is over." *State v. Majid*, 182 Ohio App.3d 730, 2009-Ohio-3075, 914 N.E.2d 1113, ¶ 12 (8th Dist.). All of these circumstances were present in the current case, where defense counsel waited until the next day, after closing arguments had concluded, to report that he observed a juror possibly sleeping and revealed no other potential juror misconduct.

**{¶30}** Moreover, this incident allegedly occurred only during closing arguments. Even if the juror in question had been sleeping during closing arguments, we cannot hold that this resulted in prejudice to Suarez. Where there is no evidence that the juror missed "large or critical portions of the trial," plain error does not occur in allowing the juror to remain on the panel. *Sanders*, 92 Ohio St.3d at 253, 750 N.E.2d 90; *State v. McConkey*, 11th Dist. Ashtabula No. 2004-A-0017, 2005-Ohio-6580, ¶ 24. In this case, any potential portion of the trial missed occurred during closing arguments, not during presentation of any evidence or jury instructions necessary to properly reach a verdict in this case. There is also no indication that it had any impact on the rest of the jury due to the fact that the juror was the foreman, as is alleged by Suarez.

**{¶31}** Even to the extent that it can be argued that, since defense counsel did raise the issue of the sleeping juror, plain error does not apply, we cannot find error. "A trial court possesses considerable discretion in deciding how to handle a sleeping juror." (Citation omitted.) *Keener*, 2006-Ohio-5650, at ¶ 26. In light of the limited evidence of

9

the sleeping juror and the lack of prejudice that would result from a juror potentially acting sleepy briefly during closing arguments only, the trial court did not abuse its discretion in determining that no further action was necessary.

{¶32} The second assignment of error is without merit.

{¶33} For the foregoing reasons, Suarez's conviction and sentence in the Geauga County Court of Common Pleas are affirmed. Costs to be taxed against appellant.


TIMOTHY P. CANNON, P.J.,

THOMAS R. WRIGHT, J.,

concur.