[Cite as *State v. Griggs*, 2015-Ohio-4635.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2014-L-127** |
| VALAUGN D. GRIGGS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 14 CR 000456.

Judgment: Affirmed.

*Charles E. Coulson,* Lake County Prosecutor, and *Karen A. Sheppert,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Allison S. Breneman,* 1220 West Sixth Street, Suite 303, Cleveland, OH 44113 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Valaugn D. Griggs, appeals his convictions and sentence, following a trial to the court, in the Lake County Court of Common Pleas, for ten counts of Robbery. The issues to be determined by this court are whether Robbery convictions are against the weight and sufficiency of the evidence when a witness identifies a perpetrator other than the defendant and the co-defendant's testimony was inconsistent on various details, and whether it is improper when a defendant receives a

longer sentence than a co-defendant who testified against him. For the following reasons, we affirm the judgment of the trial court.

{¶2} On August 8, 2014, Griggs was indicted by the Lake County Grand Jury for five counts of Robbery, felonies of the second degree, in violation of R.C. 2911.02(A)(2); five counts of Robbery, felonies of the third degree, in violation of R.C. 2911.02(A)(3); and one count of Engaging in a Pattern of Corrupt Activity, a felony of the first degree, in violation of R.C. 2923.32(A)(1).

{¶3} A trial to the court was held in this matter on October 6-8, 2014. The following testimony and evidence were presented:

{¶4} Henry Ivezzy, Griggs' stepbrother, testified regarding his participation with Griggs in four robberies, explaining that his testimony was given in cooperation with the State. On the weekend prior to June 2, 2014, Griggs told Ivezzy he needed money to pay bills and brought up the idea of doing a robbery. On June 2, Griggs told Ivezzy that he and another person had robbed a GP Express in Parma, using a gun.

{¶5} On June 2, shortly after 1 p.m., Meghna Patel was working in her husband's gas station, GP Express. Two black males came in, one holding a gun, and ordered her to give them her money. The one without the gun grabbed the drawer and put it in a bag.

{¶6} Patel testified that she later looked at a photo lineup. During this testimony, there was a discussion on the record that the State was unaware of a photo lineup and it had not been provided by police, and, thus, had not been provided in discovery to Griggs' counsel. Defense counsel moved to dismiss "if there is an actual identification of somebody other than my client." Detective Thomas Connor met with

the parties off the record and indicated that someone other than Griggs, who was part of the photo lineup, had been identified. Testimony regarding this issue was permitted.

{¶7} Connor testified that after Griggs was arrested, he generated a photo lineup with Griggs' picture, which was shown to Patel by another detective, John Porec. Porec presented the photo lineup to Patel, she selected an individual in the lineup, and Porec returned the lineup to Detective Connor. Connor explained that some records relating to the lineup had been misplaced and he was unsure why the prosecutor had not received this information prior to trial.

{¶8} After Porec's testimony, cross-examination of Patel resumed. She testified that the signature on the copy of the photo lineup in evidence was her husband's. She did testify, however, that she reviewed a photo lineup and selected an individual who was not Griggs.

{¶9} Detective Connor then testified that he did show either Patel or her husband still shots from the robbery in Macedonia but that no photo lineup was prepared other than the one showed to Meghna Patel.

{¶10} Michael Rolle, who works at the Fraternal Order of Police located near GP Express, testified that on June 2, while sitting inside of his parked car, he saw two black men wearing hats and carrying a "package" running to a silver Mercedes with temporary tags in the area of the nearby DMV parking lot. He identified the car as an E Class Mercedes after calling a dealer and describing it. He also noted that he saw a police canine follow the robbers' path from the gas station to where the Mercedes had been parked.

{¶11} Alexis Eon, a Verizon Wireless analyst, testified that, on June 2, 2014, at approximately 1:04 p.m., a phone call was placed from Griggs' cell phone, which pinged off of a cell phone tower located on Pearl Road in Parma Heights. At 1:23, a phone call pinged off of another tower, on Pearl Road in Cleveland. Police officer testimony confirmed that these cell towers were within a couple miles of GP Express.

{¶12} After Griggs told Ivezzy that he had received $1,000 from the Parma robbery, Ivezzy decided to also participate in robberies. The two agreed to split the money obtained equally.

{¶13} According to Ivezzy, on June 2, at approximately 7:50 p.m., the two men went to a Speedway in Macedonia. Griggs asked an employee inside for directions to a liquor store, the two men exited, waited for customers to leave, and reentered. Ivezzy began to purchase a Mountain Dew, pulled out a gun, and robbed the cashier. Ivezzy, pursuant to Griggs' instruction, took the whole drawer and put it in a pillowcase held by Griggs. Ivezzy testified that the gun used in the robbery was a BB gun that belonged to Griggs.

{¶14} Anesha Rogers, a Speedway employee, testified that the man in a yellow hoodie (which Ivezzy admitted was him), came to the register to make a purchase, held a gun toward her and asked for money. Both men threatened to shoot her before taking the entire cash register tray. Regarding Griggs, Rogers believed that he looked "similar" to the second man who robbed the store but she could not positively identify him.

{¶15} Fingerprints recovered by the Macedonia police were tested by Sarah Pivovar, a forensic scientist at BCI. She was able to determine that fingerprints found

4

on the Mountain Dew bottle were Ivezzy's, but fingerprints found on a plastic bag and the money tray did not belong to Ivezzy or Griggs.

{¶16} Later on June 2, the pair robbed the Ohio Gas gas station in Wickliffe, following a similar pattern as the prior robbery. They entered, requested directions, exited, returned, and began to purchase items. Ivezzy then pulled out the gun and took the money tray when the register was opened, which was placed in the pillowcase held by Griggs.

{¶17} Timothy Gordon, an employee at Ohio Gas, testified that, at around 10:00 p.m. on June 2, two men came into the store, asking for directions. They left and returned, purchasing gum and a Black and Mild cigar. The men placed money on the counter, Gordon opened the drawer, and the man wearing a yellow hoodie with the word "Thiel" on it, pushed a gun into his chest, telling him not to move. One of the men grabbed the tray from the drawer and put it into a bag. Both men wore hats and sunglasses.

{¶18} Anthony DiDona, a Patrolman at the Wickliffe Police Department, responded to the Ohio Gas robbery. He was flagged down near the gas station and told two black males were running eastbound, but no suspects were located that night.

{¶19} Dr. Karen Zavarella, a DNA analyst at the Lake County Crime Laboratory, testified that the DNA evidence collected from the gas station door by the Wickliffe Police Department did not have sufficient DNA to perform an analysis.

{¶20} Eon testified that, less than 45 minutes before the Wickliffe robbery, calls made from Griggs' cell phone placed it near a tower in Wickliffe.

{¶21} Lieutenant Pat Hengst of the Wickliffe Police Department performed an investigation of the robbery. Hengst believed, from watching videos of several robberies, he could identify Griggs as one of the robbers, based on his facial features.

{¶22} Hengst disseminated photographs of the suspects and was contacted by an officer from Mentor, who provided the photograph to the football coach at Thiel College. This led to an investigation of Ricardo Mardamus, who was eventually excluded as a suspect based on his lack of a vehicle matching the description and an alibi.

{¶23} Wickliffe Police Detective Dan Moreland stated that another reason for ruling out Mardamus was that, although some individuals such as his coach believed he may have been the robber without the gun, that man had no facial hair, while Mardamus had thick facial hair, which was present three days after the robberies.

{¶24} Chief of the Thiel College Police Eric Allen testified for the defense. Allen became aware that a suspect in the robberies was wearing a Thiel sweatshirt and explained that Thiel College is a small private college in Pennsylvania. Allen provided the name of Mardamus as a potential suspect. Allen believed Mardamus may have committed the robberies based on the fact that he drove a silver or green Chrysler 300 similar to the initial police description, and the man in the videos of the robbery, holding the money bag, resembled him.

{¶25} Hengst later received an anonymous tip leading to the discovery of Ivezzy's identity. Hengst verified that Ivezzy was working from 11:30-3:00 p.m. on June 2. Ivezzy's employer verified that he wore a Thiel sweatshirt like the one in the robbery,

as well as the same hat. During questioning, Ivezzy revealed Griggs' identity and involvement in the robberies, which led to his arrest.

{¶26} Following the robberies on June 2, Ivezzy and Griggs went to Horseshoe Casino to gamble. Mickey Atchley, a gaming enforcement agent, verified the men's presence based on casino records.

{¶27} According to Ivezzy's testimony, on June 4, the two robbed a Sunoco in Independence. They followed the same pattern of initially entering the store to "case" it, exited, and then performed the robbery, pointing the gun at the cashier, removing the register drawer, and placing the money in a pillowcase.

{¶28} Frank Kordas, a Sunoco employee, described the robbery and stated that the gun was held to his stomach. No physical evidence was recovered by the Independence Police Department.

{¶29} On June 6, the two men robbed Star Value in Cleveland at a little after 2:00 p.m., which followed the same fact pattern as the prior robbery, according to Ivezzy and employee Michael Napier.

{¶30} Eon testified regarding a text message exchange between Ivezzy and Griggs' phones at approximately 12:20 p.m. on June 6, where Griggs inquired as to Ivezzy's location, Ivezzy responded "at the crib," and Griggs stated he was "about to pull up."

{¶31} Surveillance camera video of varying quality was played and submitted into evidence from the robberies the two men committed together, which was generally consistent with Ivezzy's description of the robberies.

**{¶32}** Griggs' mother, Toni Griggs-Ivezzy, testified for the defense that she believed committing robberies was not in Griggs' character. She was surprised Griggs and Ivezzy had been spending time together because of incidents that occurred in the past.

**{¶33}** At the conclusion of the testimony, Griggs' counsel made a Crim.R. 29 motion and a motion to dismiss under *Brady* based on the fact that the defense did not receive the results of the lineup. These were denied by the trial court.

**{¶34}** On October 14, 2014, the court found Griggs guilty of each of the ten counts of Robbery, as charged in the Indictment. It found him not guilty of Engaging in a Pattern of Corrupt Activity. This verdict was memorialized in an October 16, 2014 Judgment Entry.

**{¶35}** Following a sentencing hearing on November 21, 2014, a Judgment Entry of Sentence was issued by the trial court. The Court merged counts two, four, six, eight, and ten with the remaining counts. Griggs was sentenced to a total term of imprisonment of 17 years.

**{¶36}** Griggs timely appeals and raises the following assignments of error:

**{¶37}** "[1.] The judge found, against the manifest weight of the evidence, that the Appellant committed the acts alleged in the indictment.

**{¶38}** "[2.] The evidence was not legally sufficient to sustain a guilty verdict.

**{¶39}** "[3.] The Trial Court abused its discretion by imposing a prison sentence contrary to R.C. 2929.14 and the purposes and principles of the felony sentencing guidelines and erred by imposing consecutive sentences."

8

**{¶40}** We will consider the first two assignments of error, which relate to the manifest weight of the evidence and the sufficiency of the evidence, jointly.

**{¶41}** In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**{¶42}** Whereas "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). "In other words, a reviewing court asks whose evidence is more persuasive -- the state's or the defendant's?" *Id.* An appellate court considering whether a verdict is against the manifest weight of the evidence must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶43}** In order to convict Griggs of Robbery, the State was required to prove, beyond a reasonable doubt, that "in attempting or committing a theft offense" he did "[i]nflict, attempt to inflict, or threaten to inflict physical harm on another" (for second-

9

degree felony Robbery) and did "[u]se or threaten the immediate use of force against another" (for third-degree felony Robbery).  R.C. 2911.02(A)(2) and (3).

**{¶44}** Griggs first argues that the testimony of Meghna Patel that he was not one of the robbers at the GP Express in Parma and she did not select him in the photo lineup, rendered the convictions against both the weight and sufficiency of the evidence.

**{¶45}** Initially, we recognize that there were unusual and problematic circumstances surrounding the photo lineup, including that the lineup form in evidence contained Meghna Patel's husband's signature instead of hers, which was not supported by the testimony that only Meghna was presented with a lineup, as well as that the lineup was not disclosed to defense counsel prior to trial.  Griggs does not raise an assignment of error arguing that this failure to disclose should be cause for reversal. There is also no argument that it was purposeful, as the State expressed genuine surprise as to the police's failure to disclose the evidence.

**{¶46}** Regardless, it was clearly before the trier of fact that Meghna identified someone other than Griggs as participating in the robbery, an issue which defense counsel more than competently pointed out during cross-examination.  The court was able to fully evaluate this issue and determine the weight to give her identification.  *See Foster v. California* (1969), 394 U.S. 440, 442, fn. 2, 22 L.Ed.2d 402, 89 S.Ct. 1127 ("the reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecution's case is a matter for the jury").

**{¶47}** There are many other facts in the record supporting the conclusion that Griggs committed the robbery of GP Express in Parma.  Ivezzy testified that Griggs admitted to committing the robbery and was able to describe details which were

accurate when compared to the other evidence. Griggs' cell phone was found to be pinging off cell phone towers in the Parma area near the time of the robbery. In addition, Rolle saw two black males near the GP Express running to a silver Mercedes with temporary tags at the time of the robbery. It was confirmed by police that Griggs was the owner of a silver Mercedes with temporary tags. Shortly after the robbery, Griggs paid various bills, including a car payment and BMV reinstatement fees. This is also consistent with the string of robberies Ivezzy testified that he committed with Griggs in the following days. All of these facts could be properly weighed against Patel's testimony as to the identity of the robber and lead the trier of fact to the conclusion that Griggs committed the Parma robbery.

**{¶48}** Griggs next argues that Ivezzy's testimony was impeached. He points to specific examples, including conflicting statements regarding the place where a conversation about the Parma robbery took place, the car in which the two were driving during the Wickliffe robbery and to the casino, the time at which Griggs made a car payment, and Ivezzy's failure to disclose the Cleveland robbery during his proffer.

**{¶49}** While it is clear that there were some inconsistencies in Ivezzy's testimony and prior statements, none of these instances are particularly relevant to the robberies themselves. Each of these issues relate to minor details, some of which had little to do with the robberies, and may be more easily forgotten than the events of the crimes. There was no evidence disproving the truth of Ivezzy's testimony regarding the details of the robberies themselves, which were consistent with the videos and the victims' testimony.

11

{¶50} Specifically, the two cars mentioned were both silver and within Griggs' control, easily confused by Ivezzy. It is also not surprising that Ivezzy would not initially admit to a robbery of which police were unaware. The trial court was aware of these inconsistencies and chose to determine that Ivezzy was a credible witness, which was proper, since "[t]he determination of a witness' credibility lies with the finder of fact and an appellate court may not substitute its own judgment." (Citation omitted.) *State v. Higginbottom*, 11th Dist. Portage No. 2012-P-0028, 2012-Ohio-5834, ¶ 55.

{¶51} Griggs also argues that Ivezzy's testimony was self-serving, since he had an interest in implicating someone in order to receive a lower sentence. The facts in the record indicate that Ivezzy did take awhile to indentify Griggs and he explained that he struggled with revealing his identity. While the two men may have previously had some problems in their relationship, they spent time together before the robberies occurred, as documented by photographs and cell phone records. In addition, there is other evidence placing Griggs near the scene of at least some of the robberies, corroborating Ivezzy's testimony, including the facts relating to the Parma robbery, text messages showing that Ivezzy and Griggs met up prior to the Cleveland robbery, and cell phone records for the Wickliffe robbery. Again, the court was in the best position to determine Ivezzy's credibility.

{¶52} Griggs next takes issue with Rolle's testimony regarding the silver Mercedes, noting that, although Rolle stated that it had temporary tags, he did not notice they were expired, as well as the fact that Rolle and the police did not know the car was a Mercedes until Rolle did further investigation.

{¶53} It is hardly noteworthy that Rolle did not notice Griggs' temporary tags were expired, given that he was inside of his vehicle in a different parking lot from where Griggs' car was located. The existence of a temporary tag is much more noticeable from a distance than the expiration date written on that tag. Further, Rolle testified that he immediately noticed the distinctive round headlights and that the car was a Mercedes, but was able to identify the vehicle more specifically as an E Class Mercedes by doing further research. This does not make his description of the vehicle any less credible.

{¶54} Griggs also asserts that Rolle works for the Fraternal Order of Police and that his statement was not provided to the police until over a week after the robbery, both in an attempt to attack his credibility. We fail to see how the delay in the police receiving the statement, without more, indicates untruthfulness. Rolle explained that he had a limited relationship with police officers and demonstrated no reason for being dishonest in this matter. The court, as the trier of fact, was entitled to determine his credibility.

{¶55} Griggs argues that Eon's testimony regarding the cell phone records should be questioned, given that she was not deemed an expert on cell phone pings. Defense counsel did not object on this ground and had the ability to raise issues regarding the validity and reliability of this evidence.

{¶56} Griggs next contends that the existence of Mardamus as a suspect created reasonable doubt about Griggs' participation in the robberies. This is based on testimony from individuals who knew Mardamus and believed he looked like one of the robbers. This information alone, given that police discovered he had an alibi, did not

have a car that was the one known to be used in the robbery, and the existence of thick facial hair not seen on the robber in the video, provided plenty of grounds to discount him as a suspect. This is especially true given that Griggs was tied to the robberies by his location at certain cell phone towers, his vehicle, and Ivezzy's detailed testimony of his participation. The fact that police had another potential suspect at one point does not alter the evidence against Griggs.

{¶57} Griggs also argues generally that the police investigation was weak, including the issues with the photo lineup, the failure to obtain physical evidence at most of the robbery locations, and failure to subpoena witnesses to determine if Griggs had actually been using the phone at the times it pinged off cell phone towers.

{¶58} The fact that police did not investigate every possible piece of evidence does not change the evidence that was presented at trial linking Griggs to the robberies. Given that the evidence was more than sufficient for his convictions, it was not necessary to obtain additional evidence. *See State v. Ballard*, 5th Dist. Stark No. 1998CA00311, 1999 Ohio App. LEXIS 2812, 6-7 (June 1, 1999) ("we will not speculate on what further police investigation may or may not have discovered," given the existence of sufficient credible evidence). Defense counsel was free to subpoena any witness he chose to prove Griggs had not been the one making phone calls and also to emphasize during cross-examination the lack of physical evidence (which he did).

{¶59} Finally, Griggs argues that his convictions were based on weak circumstantial evidence. "Circumstantial evidence and direct evidence inherently possess the same probative value." *State v. Sanders*, 11th Dist. Lake No. 2011-L-024, 2012-Ohio-400, ¶ 34, citing *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph

14

one of the syllabus. Given all of the evidence described above, the verdict was not against the weight and sufficiency of the evidence. Each element of the crime was proven beyond a reasonable doubt and the evidence weighs in favor of a guilty verdict.

{¶60} The first and second assignments of error are without merit.

{¶61} In his third assignment of error, Griggs argues that the trial court abused its discretion in imposing a prison sentence, including consecutive sentences, that was inconsistent with the felony guidelines.

{¶62} The overriding purposes of felony sentencing in Ohio "are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). "A sentence imposed for a felony shall be reasonably calculated" to achieve those purposes, "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B). The trial court is required to consider the factors set forth in R.C. 2929.12, which include the seriousness of the offender's conduct and the likelihood of recidivism.

{¶63} It is well-recognized that a sentencing court "has discretion to determine the most effective way to comply with the purposes and principles of sentencing." R.C. 2929.12(A). "[T]he trial court is not obligated, in the exercise of its discretion, to give any particular weight or consideration to any sentencing factor." *State v. Holin*, 174 Ohio App.3d 1, 2007-Ohio-6255, 880 N.E.2d 515, ¶ 34 (11th Dist.).

15

**{¶64}** "The court hearing an appeal [of a felony sentence] shall review the record, including the findings underlying the sentence or modification given by the sentencing court." R.C. 2953.08(G)(2). "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing * * * if it clearly and convincingly finds * * * [t]hat the record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14, or * * * [t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a) and (b).

**{¶65}** Specifically, Griggs takes issue with the fact that Ivezzy was sentenced to a term of 10 years, given his criminal history of theft, while Griggs received 17 years and had no prior convictions. He asserts that the sentences were inconsistent and he was punished for going to trial. R.C. 2929.11(B) ("[a] sentence imposed for a felony shall be * * * consistent with sentences imposed for similar crimes committed by similar offenders").

**{¶66}** There is no question that the lower court considered the necessary factors in reaching its sentence, stating that it had considered R.C. 2929.11 and .12, and discussing each of the applicable factors. It specifically noted the lack of remorse expressed by Griggs, the harm to the victims, and the seriousness of the offenses, as well as Griggs' lack of a criminal record.

**{¶67}** "[T]his court has repeatedly held that consistency in sentencing is accomplished by the trial court's application of the statutory sentencing guidelines" and, "to show a sentence is inconsistent, a defendant must show the trial court failed to properly consider the statutory purposes and factors of felony sentencing." *State v.*

*Brody*, 11th Dist. Lake Nos. 2010-L-095, et al., 2011-Ohio-4884, ¶ 43; *State v. Delmanzo*, 11th Dist. Lake No. 2007-L-218, 2008-Ohio-5856, ¶ 37 ("we do not believe that a numerical comparison to other sentences is dispositive of the issue of consistency"). This is a logical conclusion given the difficulty of comparing the two sentences, since the record and considerations made in Ivezzy's sentences are not before this court. Griggs' lack of remorse alone could account for some of the difference in the sentences.

{¶68} Griggs fails to recognize that, even comparing the two sentences, he was convicted of and sentenced for five robbery offenses, while Ivezzy was convicted of only four. This alone justifies a greater sentence. Further, although Griggs takes issue with the recommendation of a shorter sentence in return for Ivezzy's cooperation, this was not uncommon or contrary to law.

{¶69} Griggs also argues that the trial court erred in ordering consecutive sentences.

{¶70} "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37.

{¶71} Pursuant to R.C. 2929.14(C)(4), separate prison terms for multiple offenses may be ordered to be served consecutively if the court finds it "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to

17

the danger the offender poses to the public," and if the court also finds any of the factors in R.C. 2929.14(C)(4)(a)-(c) are present. The pertinent factor in this case is:

> At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

R.C. 2929.14(C)(4)(b).

{¶72} Here, Griggs concedes that the court "put the required factors on the record" but argues that the facts did not support consecutive sentences, noting his lack of a criminal record and that he was "the least culpable of the men involved."

{¶73} The court properly followed the requirement to find that consecutive sentences were necessary to protect the public and that the conduct was serious enough to warrant multiple sentences. The court was not required to make factual findings to support this conclusion, but the record demonstrates that Griggs participated in a course of conduct including five robberies, where a weapon was used to threaten victims, and that this caused harm to the victims. The lower court did not err in ordering that Griggs serve consecutive sentences.

{¶74} To the extent that Griggs again argues the different sentences given to the two defendants were inconsistent, this is not relevant to the application of the consecutive sentencing factors and this issue has been fully addressed above.

{¶75} The third assignment of error is without merit.

18

{¶76} For the foregoing reasons, Griggs' convictions and sentence for Robbery are affirmed.  Costs to be taxed against the appellant.


CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.