[Cite as *State v. Flenner*, 2018-Ohio-1027.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-T-0054** |
| CECIL LEE FLENNER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 2016 CR 00641.

Judgment: Affirmed.

*Dennis Watkins*, Trumbull County Prosecutor, and *Gabriel M. Wildman*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Stephen A. Turner*, Turner, May & Shepherd, 185 High Street, N.E., Warren, OH 444481 (For Defendant-Appellant).

THOMAS R. WRIGHT, P.J.

{¶1}     Appellant, Cecil L. Flenner, appeals his conviction and sentence on seven felony offenses, including aggravated burglary, rape, and kidnapping.  He contests the sufficiency of the evidence, the manifest weight of the evidence, and the merger of the kidnapping count for purposes of sentencing.  We affirm.

{¶2}     Appellant has been addicted to cocaine for twenty years.  During most of

that time, he has been close friends with Lisa Prater, a cocaine addict for over fifteen years. In the beginning, appellant's relationship with Prater was limited to using illegal drugs together. However, as the years went by, they began to live together at various locations in the Warren, Ohio area. Usually, their living arrangements would only last for a few months, and they would then go their separate ways. Nevertheless, their friendship endured.

{¶3} At some point in 2013, Prater was convicted of cocaine possession, a fifth-degree felony. As a result of this conviction, Prater became motivated to "beat" her addiction. Over the ensuing three years, she remained "clean" and began attending church as often as she could. With assistance from her parents, she was also able to purchase a trailer, located near her church in the Warren area.

{¶4} During the course of her rehabilitation, Prater maintained her friendship with appellant. Furthermore, during certain periods in which appellant was able to stop taking illegal drugs, Prater allowed him to reside with her. One such period began in June 2016, when he moved into her trailer. But, despite the closeness of their relationship, the parties had an agreement that their cohabitation would end if appellant started using cocaine again.

{¶5} This period of cohabitation lasted for approximately two months. In early August 2016, appellant began a serious cocaine binge and immediately removed most of his belongings from the trailer. Since Prater felt that she must end her friendship with appellant due to his inability to remain sober, she required him to leave his key to the trailer with her.

{¶6} In the days following their breakup, Prater believed that appellant was

2

stalking her by driving around the general area near her trailer. She also believed that, on one occasion, he broke into the trailer through a window and stole some small items. Consequently, her father and a church friend inserted additional screws through each of her window frames so that the windows could not be pried open. They also installed two new locks on her front door.

{¶7}  According to Prater, on the morning of August 25, 2016, she observed appellant sitting in his truck near her trailer, looking at her through a window as she had a cup of coffee. In response, she called his probation officer to report his behavior. But, after a few moments, appellant drove away from the trailer, and Prater did not have any further contact with him that day. At approximately 10:00 p.m., she took her daily medications and went to bed. Due to the nature of her pills, she was a sound sleeper.

{¶8}  According to appellant, he stopped at the trailer that morning because he wanted to tell Prater that he had decided to straighten up his life. Under his version, they had an amicable conversation about the situation, and Prater told him that he could come back that evening. She also allegedly gave him a new key to the front door. Yet, although appellant intended to come back later that day, he was delayed because he had an opportunity to smoke crack cocaine. Thus, he did not return to the trailer until 1:00 a.m. on August 26.

{¶9}  There is no dispute that upon his return, appellant parked his truck in the parking lot of a nearby church, walked across a field to Prater's trailer, and smashed one of her windows with a crowbar. After that, the two versions of the ensuing events vary greatly. According to Prater, appellant terrorized her during the next few hours by committing the following acts: hitting her with his fist in the face and chest, threatening to

3

kill her, raping her, choking her until she was rendered unconscious for a short period, and forcing her to take a shower. According to him, Prater willingly let him into the trailer after hearing him smash the window, and they had consensual sex. Later, they had a physical altercation when Prater became jealous after he received a telephone call from a female cocaine user. During that altercation, he slapped Prater's face with his open hand.

{¶10} There is likewise no dispute that appellant was high on cocaine during the entire event. At approximately 5:00 a.m., he passed out on the living room couch, and Prater immediately called the local police. Meeting the responding police officers in the driveway to her trailer, she quickly informed them that appellant had broken into her residence and raped her. The officers observed that Prater appeared frightened and had multiple bruises on her face and neck. After speaking to the officers, she was taken by ambulance to a local hospital.

{¶11} In addition to Prater's allegations, the officers learned over their radios that there was an outstanding warrant for appellant's arrest. Accordingly, appellant was immediately taken into custody.

{¶12} At the hospital, a sexual assault nurse examined Prater. As part of the procedure, the nurse took Prater's statement concerning the rape and documented the injuries to her face, neck, chest, and left knee. Although Prater's genitals were examined, no trauma or DNA evidence was found in this part of her body. However, subsequent tests of Prater's night shirt revealed the presence of seminal fluid, and appellant's DNA was found on the same item.

{¶13} After preliminary proceedings before a municipal court, the county grand

jury returned a seven count indictment charging appellant with the following: two counts of aggravated burglary, first-degree felonies under R.C. 2911.11(A)(1) & (A)(2); two counts of rape, first-degree felonies under R.C. 2907.02(A)(2); one count of kidnapping, a first-degree felony under R.C. 2905.01(A)(3); one count of domestic violence, a third-degree felony under R.C. 2919.25(A); and one count of tampering with evidence, a third-degree felony under R.C. 2921.12(A)(1).

{¶14} At trial, Prater testified that the following occurred after appellant entered the trailer: (1) she initially woke up because someone was laying on top of her and hitting her in the head; (2) she did not know who her attacker was until he got up and turned on the light, whereupon she saw it was appellant; (3) he was holding a crowbar and threatening her, stating he was going to kill her by crushing her skull; (4) appellant took possession of Prater's cell phone before waking her; (5) he continued to threaten her for a substantial period, during which he twice went into the kitchen for water and food; (6) after threatening her with a knife he got from the kitchen, he left her bedroom and went to the laundry room to get bleach to pour on her clothes; (7) at that point, Prater tried to escape by running to the front door; (8) appellant caught her by the door and dragged/pushed her back to the bedroom; (9) after pushing her onto the bed, he took off Prater's night clothes and forced her to engage in oral and vaginal sex; (10) appellant punched her and held her around the throat while raping her; (11) at the end of the vaginal sex, he ejaculated on Prater's stomach; (12) he again told her that he was going to kill her, grabbed her by the throat, and then choked her until she lost consciousness; (13) when Prater woke, appellant was dressed and walking down the hallway; (14) she put her night shirt on and started to follow him; (15) at that juncture, he ordered her to take a

5

shower so that there would be no evidence of the rape; (16) she got into the shower and let the water run over her, but did not use soap; (17) after the shower, appellant got a telephone call which changed his attitude, and he began to act as if nothing had happened; (18) he told Prater he was leaving, but he passed out before making it to the front door; and (19) she called 9-1-1 with a spare cell phone she kept hidden in her bedroom.

{¶15} Appellant testified on his own behalf, stating that, even though he used the crowbar to brake the window, Prater still willingly allowed him into her residence and they had consensual sex. Although he admitted he slapped Prater during a physical altercation, he claimed this did not occur until after they had sex and was instigated when Prater became jealous about a phone call he received from another female.

{¶16} The jury found appellant guilty on all counts. For purposes of sentencing, the trial court merged the two aggravated burglary counts. The court then imposed 10 years on the remaining aggravated burglary count; 10 years on each of the two rape counts; five years on the kidnapping count; 36 months on the domestic violence count; and 36 months on the "tampering with evidence" count. The trial court further ordered the first four terms to be served consecutively, while the two 36-month terms would be served concurrently with each other and the other four terms. As a result, appellant was given an aggregate term of 35 years.

{¶17} In appealing, appellant raises six assignments of error for review:

{¶18} "[1.] The state failed to produce evidence that was legally sufficient to sustain the jury's verdict that appellant tampered with evidence.

{¶19} "[2.] The jury's verdict of guilty on the counts of aggravated burglary was

6

against the manifest weight of the evidence.

{¶20} "[3.] The jury's verdict of guilty on the counts of rape was against the manifest weight of the evidence.

{¶21} "[4.] The jury's verdict of guilty on the count of kidnapping was against the manifest weight of the evidence.

{¶22} "[5.] The jury's verdict of guilty on the count of tampering with evidence was against the manifest weight of the evidence.

{¶23} "[6.] The trial court erred when it failed to merge the kidnapping count with an allied offense."

{¶24} Under his first assignment, appellant contends his conviction for tampering with evidence cannot stand because the state failed to present any testimony showing that he committed an act causing the destruction of relevant evidence. The "evidence" in dispute is the seminal fluid which, according to Prater, appellant ejaculated on her stomach after the vaginal rape. In charging him with this offense, the state alleged that he purposely acted to destroy the seminal fluid by requiring Prater to take a shower. Appellant argues that no destruction of the fluid could have occurred because Prater specifically testified that she did not use soap during the shower.

{¶25} In raising this argument, appellant is contesting the legal sufficiency of the state's evidence as to the "tampering" count:

{¶26} "'A sufficiency of the evidence argument challenges whether the state has presented evidence for each element of the charged offense. The test for sufficiency of evidence is whether, after viewing the probative evidence and the inferences drawn from it, in a light most favorable to the prosecution, any rational trier of fact could find all

7

elements of the charged offense proven beyond a reasonable doubt.' *State v. Barno*, 11th Dist. No. 2000-P-0100, 2001-Ohio-4319, 2001 Ohio App. LEXIS 4280, at *16, 2001 WL 1116908 [at *5] citing *State v. Jones*, 91 Ohio St.3d 335, 345, 744 N.E.2d 1163 2001-Ohio-57. Whether sufficient evidence has been presented to allow the case to go to the jury is a question of law; thus, an appellate court is not permitted to weigh the evidence when making this inquiry. *State v. Schlee* (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *13, 1994 WL 738452 [at *4] (citations omitted). A reviewing court will not reverse a jury verdict 'where there is substantial evidence upon which the jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt.' *Id.* citing *State v. Eley* (1978), 56 Ohio St.2d 169, 383 N.E.2d 132, at the syllabus. Thus, an appellate court will examine the evidence and determine whether that evidence, 'if believed, would convince the average mind of a defendant's guilt beyond a reasonable doubt.' *State v. Norwood*, 11th Dist. No. 2005-L-047, 2006-Ohio-3415, at ¶15, citing *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492." *State v. Higgins*, 11th Dist. Lake No. 2005-L-215, 2006-Ohio-5372, ¶22.

**{¶27}** Appellant was charged with one count of tampering with evidence under R.C. 2921.12(A)(1), which provides:

**{¶28}** "(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

**{¶29}** "(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation."

**{¶30}** According to Prater, as she began to follow appellant down the hallway after she regained consciousness, he ordered her to immediately take a shower for the express

8

purpose of disposing of any "proof" that he raped her.  Prater also testified that, even though she complied with his demands and got into the shower, she did not use any soap.  Based upon this testimony, appellant maintains that the state's evidence is insufficient to establish that his "order" to Prater resulted in the destruction of the ejaculate on her stomach.

{¶31}  However, the state presented other evidence demonstrating that, although a skin swab of Prater's stomach was taken during the examination performed by the sexual assault nurse, no trace of seminal fluid was found on her stomach or any other part of her body.  Therefore, a reasonable person could conclude that, notwithstanding the lack of soap, the seminal fluid was removed from her body as a result of the water from the shower.  To this extent, the state presented some evidence sufficient to satisfy the "destruction" element of tampering with evidence.  Appellant's first assignment lacks merit.

{¶32}  Under his next four assignments, appellant asserts each of his convictions for aggravated burglary, rape, kidnapping, and tampering with evidence are against the manifest weight of the evidence.  Although asserting a separate assignment of error as to each conviction, he has raised the identical argument regarding all four.  Specifically, he contends that the jury should have rejected Prater's testimony as unbelievable in contrast to his version of the incident because her testimony directly conflicts with prior statements she gave to the police and the sexual assault nurse.

{¶33}  "Whereas 'sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief.'  *State v. Wilson*, 113 Ohio

St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). 'In other words, a reviewing court asks whose evidence is more persuasive – the state's or the defendant's?' *Id*. An appellate court considering whether a verdict is against the manifest weight of the evidence must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, 'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' *Thompkins*, at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983)." *State v. Griggs*, 11th Dist. Lake No. 2014-L-127, 2015-Ohio-4635, ¶42.

**{¶34}** Even though an appellate court is required to consider the credibility of the witnesses as part of its review of the evidence, we are also obligated to show due deference to the jury's resolution of this matter. *State v. Tvaroch*, 11th Dist. Trumbull No. 2012-T-0008, 2012-Ohio-5836, ¶45.

**{¶35}** "'As a general proposition, we have consistently indicated that questions of witness credibility are primarily for the trier of fact to decide. [*State v. Johnson*, 11th Dist. No. 2009-T-0042, 2010-Ohio-1970, 2010 WL 1782446, at ¶17,] citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The basis of this proposition is that the trier of fact is in a much better position to observe the body language, demeanor, and voice inflection of the witnesses.' *State v. Meeks*, 11th Dist. No. 2011-L-066, 2012-Ohio-4098, 2012 WL 3893588, ¶37." Id. at ¶46.

**{¶36}** At trial, appellant's counsel argued that Prater's trial testimony was not consistent with her statements to the police immediately after the incident. Specifically,

counsel noted that Prater referenced the rapes early in her statements to the police, thereby insinuating that the rapes occurred soon after appellant broke into the trailer. In contrast, she clearly stated during her trial testimony that appellant terrorized her for a substantial period before committing the rapes. Based upon this, counsel asserted that Prater had given conflicting versions of the incident, thereby rendering her testimony unbelievable.

{¶37} However, there is a logical reason for the alleged inconsistency between Prater's testimony and her prior statements. When she spoke to the police the day of the incident, the incident had just ended, and Prater was still under the immediate emotional distress of the situation. Under such circumstances, it is understandable that the statements she gave to the police were not as detailed as her testimony eight months later. Furthermore, given that the two rapes were the most serious offenses that occurred in the incident as described by Prater, it is not surprising that Prater would reference them early in her statement to the police notwithstanding the fact that appellant terrorized her at least one hour before committing the rapes.

{¶38} Appellant was clearly nervous in testifying at trial; thus, her testimony was sometimes rambling, as she would try to address multiple issues in answering a single question. Nevertheless, her testimony was generally coherent and did not contain illogical inconsistencies. Moreover, her version of the incident was supported by other physical facts, such as the nature of the injuries to her face and the presence of seminal fluid on her night shirt. In addition, as the state aptly notes, the jury could have reasonably rejected appellant's testimony on the grounds that, by his own admission, he had been on a cocaine binge for several days prior to the incident. Therefore, the jury did not lose

11

its way in finding Prater's testimony credible.

{¶39} Appellant does not dispute that, if believed, the state's evidence satisfies all of the elements for aggravated burglary, both rapes, kidnapping, and tampering with evidence. Accordingly, all four of his "manifest weight" assignments are without merit.

{¶40} Under his last assignment, appellant maintains that the trial court erred in imposing a separate sentence on the kidnapping count because that crime should have been merged into either the two rape counts or the "tampering with evidence" count. He argues that the additional penalty is unjustified when the kidnapping did not expose Prater to any separate harm and was not committed with a separate animus.

{¶41} "R.C. 2941.25 reflects the General Assembly's intent to prohibit or allow multiple punishments for two or more offenses resulting from the same conduct. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, ¶11. R.C. 2941.25 provides:

{¶42} "'(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment * * * may contain counts for all such offenses, but the defendant may be convicted of only one.'

{¶43} "'(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment * * * may contain counts for all such offenses, and the defendant may be convicted of all of them.'" *State v. Armstead-Williams*, 11th Dist. Portage No. 2016-P-0007, 2017-Ohio-5643, ¶18-20.

{¶44} "In other words, by statute, when the defendant's conduct constitutes a single offense, the defendant may be convicted and punished only for that offense. When

12

the conduct supports more than one offense, however, a court must conduct an analysis of allied offenses of similar import to determine whether the offenses merge or whether the defendant may be convicted of separate offenses.

{¶45} "In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, the Ohio Supreme Court set forth the standard for determining whether merger is apposite, holding that '[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered.' *Id.* at syllabus. Recently, in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, the Supreme Court clarified that two or more offenses may result in multiple convictions if any of the following are true: '(1) the offenses are dissimilar in import or significance – in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation.' *Id.* at ¶25." *State v. Jameson*, 11th Dist. Ashtabula No. 2014-A-0069, 2015-Ohio-4634, ¶10-11.

{¶46} As a general proposition, the offenses of kidnapping and rape are allied offenses of similar import. *State v. Miller*, 11th Dist. Trumbull No. 2010-T-0018, 2010-Ohio-5795, ¶73-74, quoting *State v. Price*, 60 Ohio St.2d 136, 393 N.E.2d 772 (1979), paragraph five of the syllabus. Regarding the issue of when rape and kidnapping are committed with separate motivations, *Miller* quoted the following passage from *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶90:

{¶47} "'In *State v. Logan* (1979), 60 Ohio St.2d 126, 397 N.E.2d 1345, we established guidelines to determine whether kidnapping and rape are committed with a separate animus so as to permit separate punishment under R.C. 2941.25(B). We held

in *Logan* that "where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, when the restraint is prolonged, the confinement secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions." *Id.* at paragraph (a) of the syllabus. Conversely, the *Logan* court recognized that where the asportation or restraint "subjects the victim to a substantial increase in risk of harm separate and apart from the underlying crime, there exists a separate animus." *Id.*, 60 Ohio St.2d 126, 397 N.E.2d 1345, at paragraph (b) of the syllabus.'" *Miller*, 2010-Ohio-5795, at ¶76.

**{¶48}** According to Prater, appellant was inside her home a prolonged period of time, at least one hour, before the rapes occurred. During that period, he terrorized her by hitting her with his fist, threatening her with a crowbar and knife, and threatening to take her life. Thus, during that initial period before the rapes, Prater's liberty was restrained, and she was subject to a substantial risk of harm that was distinct from the rapes. Given these facts, appellant had a separate animus as to the kidnapping count and the two rape counts.

**{¶49}** Even if it is assumed, for purposes of this discussion, that kidnapping and tampering with evidence are allied offenses of similar import, the foregoing "separate animus" analysis would still apply. Again, appellant's restraint of Prater prior to the rapes cannot be characterized as merely incidental to his subsequent action of forcing Prater to take a shower. Therefore, the trial court did not err in imposing a separate prison term on the kidnapping count because it was not subject to merger under R.C. 2941.25.

14

Appellant's sixth assignment also lacks merit.

{¶50} The judgment of the Trumbull County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

CYNTHIA WESTCOTT RICE, J.,

concur.